## COURT OF APPEALS.

EAST RIVER BANK, respondents agt. ANSON B. HOYT and others, appellants.

Where a *bank*, on discounting a note for a customer, makes it a condition that he shall pay the interest on the note for the full time it has to run, and that he shall *keep on deposit in the bank a portion of the proceeds until the maturity of the note*, it is a bold undisguised violation of the statute of *usury*.

*June Term*, 1865.

APPEAL from judgment of the general term of the supreme court of the first district. The action is upon a promissory

note made by the two defendants, Anson B. Hoyt and George Hoyt, copartners, of the firm of Hoyt & Brother, payable to the order of Belding Hoyt, another defendant, and indorsed by him, and also by the other defendants, dated 22d June, 1861, payable three months after date, and payable at the People's Bank. The note was discounted by the plaintiffs.

The defence is usury. The answer, in substance, alleges that the plaintiffs held a note of Hoyt. & Brother, the makers, for one thousand dollars, past due, and which they, the defendants, were desirous of paying. That the plaintiffs proposed to them to discount their paper for $1,500, on condition that $1,000 should be used as a renewal of their past due note, and that $500 so to be discounted, should remain in the bank as a deposit until the note in question (which was a part of the paper to be discounted) should become due, and that the defendants should leave with the bank their check for $500 to meet and pay the note in suit when it became due, and that upon this condition, three notes of $500 each were discounted by the plaintiffs, the proceeds so put to the credit of Hoyt & Brother, and their check given, payable at the maturity of the note in question. The other defendants were mere accommodation indorsers of the note for Hoyt & Brother, having received no consideration therefor. The action was tried in October, 1862, at a circuit court. The verdict of the jury was for the defendants, and the court ordered the complaint dismissed, and a judgment was entered for costs in favor of the defendants. From this judgment the plaintiffs appealed to the general term, who reversed the judgment and directed a new trial, costs to abide the event. From this order the defendants appeal to this court, and stipulate as under section 11 of the Code, in case of affirmation, that the judgment be absolute.

BANKS & ANDERSON, *for respondents.*

R. W. VAN PELT, *for appellants.*

POTTER, J.    The general term in reversing the judgment below (41 *Barb.* 441), proceeded upon the assumption that the ruling of the judge on the trial, in the admission as evidence of the statement of one of the directors of the plaintiffs, was the only question in the case.    In this view I think the general term erred.    If the plaintiffs, in discounting the three notes amounting to $1,500, imposed it as a condition to the renewal of the over due $1,000 note, that $500 of the excess of the proceeds of the three notes should remain as a deposit in their bank until the note in question became due, and demanded the defendants' check for such excess of proceeds, payable at the time the note became due, and the defendants agreed to and did consummate this condition, then the note in question was clearly void for usury.

Independently of the question upon which alone the general term reversed the judgment below, it appears to me that the clear and decided weight of evidence of the plaintiffs' president, and the undisputed evidence of one of the defendants, are sufficient to establish the defence set up; and if we strike the evidence objected to out of the case, we are still necessarily brought to the conclusion that the defence was made out, and that the defendants should have judgment.    It is not disputed that the defendants Anson B. Hoyt and George Hoyt, owed the plaintiffs $1,000 upon a note then past due; that they applied to the bank for a discount to pay this over due note; that the bank declined to discount for this purpose, assigning as the reason, and the only reason, that the deposits of the defendants, Hoyt & Brother, in their bank were small.    They had a right, doubtless, to refuse for this reason, or to refuse without assigning any reason, though the assigned reason might be quite suggestive to the defendants.    The president more than suggested; he said the bank discounted for those who

had balances of sufficient value to pay for their accounts ; here was also information that deposits were of value to the bank, but these mere suggestions, and this information were needless. By way of hint, the president goes beyond intimation, inferences and suggestions. He testifies in terms, " we told him if he wanted a discount he must keep a good balance ;" and it is seen that they had previously declined " on account of the smallness of his deposit." Now the president dictates terms that amount to a condition. This, it must be borne in mind, is a proposition made by a lender of money to a patron and customer, made to one whom they knew was in circumstances of some need, to one who was in some degree within their power, whose paper stood over due and dishonored, whose credit, in degree, depended on their favor. There could, therefore, be no mistaking this proposition to be a condition of the agreement to discount. The agreement was accepted. Mr. Hoyt testifies, that he promised " that his balance should be reasonable thereafter." What appeared to the plaintiffs to be " a reasonable amount," so to be kept in deposit by the defendants, and what sum the defendants consented so to leave on deposit, appears from uncontradicted evidence in the next step taken in carrying out the agreement. The president says, " the bank discounted three notes for him (meaning Anson B. Hoyt, with whom the arrangement was made) of $500 each, and credited the proceeds, less the discout at seven per cent., to the defendants." The defendant Anson B. Hoyt's testimony in relation to the condition, and to the consummation of the agreement, which is uncontradicted, is as follows : " He " (the preident) " said, if I would draw my check for $500 and leave it in the bank, that the three notes for $500 each would be discounted for me." There can be no doubt, I think, that the proposition as so stated is a condition. The witness adds : " Of the proceeds of these three notes, I was to have $1,000 ; $500 was to be left in the bank, with my

check for $500 tó take it up when it became due.   I paid $33 interest for the use of the $1,000." The witness then produced the memorandum made at the time, showing the apparent items of interest as they had been cast, which together amount to $33.48.   If, as it might seem to be, one of the items on this memorandum, $5.94 is interest on the over due note, another item of ninety-one cents is for the protest, and that interest on two of the $500 notes was cast for one hundred days, one for seventy-eight days, as is indicated by this memorandum, then the cast of interest on the $1,500 is correct, and the total of all the items so deducted or paid would be $33.48.   The·witness then adds: " The president required this to be done before he would let me have the discount." He further adds:  " I had a small balance in the bank before these were discounted."

The only fact in the evidence I have stated, about which there can be a possible pretence of conflict, is that the two witnesses apply different terms to the same act.   The defendant supposes he paid interest on the discount on the day of it, by passing to the bank a sum equal or about equal to the interest as computed; the memorandum of which, made at the time, he produced.   The president of the bank took the interest out of the proceeds óf the note before he put the balance to the defendant's credit, and then used the sum paid by the defendant, which was equal tó the interest, and calls it a deposit; the result is the same whether it is called by the one name or the other. The fact is sworn to by both; there is no conflict, except whether the sum was $33 or $34; whether it was the one or the other is immaterial; whether it was interest or deposit is immaterial.

From the testimony of both, one fact remains certain— the bank took out of the defendants' money the interest on $1,500 for the time the notes had to run, and that by the agreement as made and consummated, the defendants received but $1,000; that the plaintiffs demanded, and the

defendants agreed to comply with the demand of paying the interest on $1,500 for the use of $1,000 ; that the plaintiffs demanded as a condition for the loan the use of $500 of the defendants' money for three months, and the defendants consented to the demand ; that the plaintiffs demanded of the defendant his check at the time of the discount for $500 of the proceeds of said notes, payable when the note in suit became due, and the defendant gave his check accordingly ; that the plaintiffs demanded that the defendants should leave $500 of the proceeds of the discounted note as a deposit for three months, as a condition to the loan, and the defendants agreed to submit to the demand. The president himself corroborates Hoyt in the fact of the agreement, and of taking the check in consummation of it. These unconflicting and uncontroverted facts stand by themselves. They are unaffected by the evidence that was excepted to. A court or a jury would not be permitted to disregard them standing alone, and judgment should be given in accordance with them.

Assuming these facts to be true, it presents a case of bold, unmitigated violation of the statute in its letter and spirit. If the statute prohibiting usury can be evaded by such a subterfuge as has been offered in this case, it has become a dead letter, and had better be repealed at once. By such a contrivance, an individual or a bank, in the loan of one-half their capital, may draw interest upon the whole. The device in this case lacks even the merit of ordinary skill in its consummation ; it is an act of cupidity, an extortion that is not provided with even the decencies of a cloak to cover its nudity. If the court could have anything to do with the policy of the usury laws, the review of this case would present a fitting occasion to raise a warning voice against their repeal, but the policy of these laws is with the legislature and not with the court. The defence of usury, like any other legal defence authorized by statute, is entitled to the same respect as other defences

East River Bank agt. Hoyt.

in the courts, and when proved, it is the duty of the court to regard them the same as other cases. In the review of this case, I have come to the conclusion that the testimony in this case, independent of the testimony objected to, presents a clear case for judgment in favor of the defendant.

The judgment of the general term should be reversed.

DENIO, C. J. The judgment rendered on the verdict for the defendants was reversed by the general term on appeal, and a new trial was ordered, on the ground of an alleged erroneous ruling in admitting the letter of J. W. Jennings in evidence, against the plaintiffs' objection. The purport of the letter was an offer to extend to the defendants an accommodation to the amount of $1,000, on condition that the defendants should give the bank paper for $1,500, on which interest was to be paid, and should leave $500 of the $1,500 with the bank until the paper should mature, when the defendants would be at liberty to draw it. The letter contained the suggestion that money was worth more than seven per cent., and that the bank did not discount unless the borrowers had money on deposit in the bank. It was a suggestion, without any decent disguise, to lend the defendants the money, if they would pay an usurious premium. This does not seem to be questioned in the opinion of the supreme court, but, it is said, the letter was not evidence against the plaintiff. To determine this question, we are to take into consideration not only the facts appearing when the letter was offered, but those which were established in the subsequent stage of the trial; but if, upon the whole evidence, the letter was admissible, the judgment should not be reversed on account of the order in which it was given.

In examining these circumstances, we see in the first place, that the letter purports to have been written at the bank, for the date and heading in effect so state. Then the writer was not merely a director of the bank, but a member

of its discount board. The duties of that board are not stated, nor does it appear what authority a single member of it had. In the absence of such evidence, which it was easy for the plaintiffs to furnish, and which we cannot suppose the defendants had any means of showing, we should intend what we know to be usual, that each individual member of the discount committee is an organ of communication with customers needing discount, without authority, perhaps, to commit the board decisively, but whose recommendations are of considerable weight. The vote of the board or committee, as it should more properly be called, indicates that it was concerned in determining upon offers of customers for discounts. The remaining circumstance bearing upon the admissibility of the letter was, that the defendants presented themselves with the three notes of $500 each, precisely according to the suggestion of Mr. Jennings; that their proposal was entertained; that in effect, with the proceeds of two of the notes, they paid up the former note of $1,000, which had matured, and left the proceeds of the remaining note of $500 to their credit at the bank, to be drawn for when the note matured at the end of three months, and not before. The president testifies, that he told the defendant with whom the business was transacted, that if he wanted the discount he must keep a good balance, and that he promised that his balance should be reasonable thereafter. He denies distinctly that he told the defendant that money was worth more than seven per cent., and, also, that he had any knowledge of the letter of Jennings. The transaction actually consummated, was precisely such in form and substance as Jennings had suggested, and it is not denied but that he, as a member of the discount committee, participated in it.

I am of opinion that by connecting the facts thus established with the letter of Jennings, the letter was competent to be received in evidence for the consideration of the jury. I am, moreover, of opinion that independently of

the letter, a very clear case of usury was found. The point in which the testimony of the president differed from that of the defendant Hoyt was verbal merely, and was not material. The character of the transaction, and particularly the material feature that $500 of the money borrowed, and for which interest was paid, was to be retained by the lender until the expiration of the credit, is conceded by all the evidence. It was usurious to stipulate for such an advantage, in that the case shows a contract for usury with scarcely an attempt at disguise.

I am in favor of reversing the order appealed from, and affirming the judgment on the verdict.